IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

VICTOR E. BROW,

          Plaintiff,

                                    Civil Action 2:19-cv-4480
    v.                            Judge Sarah D. Morrison
                                      Chief Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

<u>REPORT AND RECOMMENDATION</u>

Plaintiff, Victor E. Brow, brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying his applications for

social security disability insurance benefits and supplemental security income.  This matter is

before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's

Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No.

16), Plaintiff's Reply (ECF No. 17), and the administrative record (ECF No. 9).  For the reasons

that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors

and **AFFIRM** the Commissioner's decision.

## I.      BACKGROUND

Plaintiff initially filed his current applications for disability insurance benefits on May 6,

2016, and for supplemental security income on May 18, 2016, alleging that he has been disabled

since February 27, 2015.  (R. at 235-241; 242-247.)  Plaintiff had filed previous applications

setting forth a disability period beginning on July 13, 2012.  (R. at 235; 241.)   These earlier

applications were denied by ALJ Henry B. Wansker by decision dated February 26, 2015.  (R. at

76-91.)   In concluding, based on the record before him, that Plaintiff was not disabled, ALJ

Wansker adopted the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform medium work as defined in 20 CFR
> 404.1567(c) and 416.967(c), in that he is able to lift and carry a maximum of 50
> pounds occasionally and 25 pounds frequently. He is able to stand and walk for six
> hours in an eight-hour workday and sit for six hours in an eight-hour workday. His
> ability to push and pull is unlimited with all of his extremities, except to the extent
> that he is frequency and weight restricted in his capacity to lift and carry. His ability
> to balance and kneel is unlimited. He is able frequently to climb ramps and stairs,
> to crouch, and to crawl. He is able occasionally to climb ladders, ropes, scaffolds
> and to stoop. He can perform work where there would be no concentrated exposure
> to temperature or humidity extremes or concentrated exposure to airborne
> respiratory irritants.

R.  at 82.)

In his applications relevant here, Plaintiff asserted a disability period beginning on February

27, 2015, the day following ALJ Wansker's decision.  (R. at 46.)

Administrative Law Judge Kevin Vodak ("ALJ") held a hearing on May 9, 20018, at which

Plaintiff, represented by counsel, appeared and testified.  (R. at 41-69.)  On August 22, 2018, the

ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social

Security Act.  (R. at 21-40.)  The Appeals Council denied Plaintiff's request for review on

August 7, 2019.  (R. at 1-7.)  Plaintiff timely appealed to this Court.  (ECF No. 2.)  This matter is

properly before this Court for review.

## II.    HEARING TESTIMONY

Plaintiff testified at the administrative hearing on May 9, 2018, that his problems include difficulty with his lumbar spine.  (R. at 50.)  He stated that, since 2015, his "[l]ower back is affecting [him] where [he] cannot work…." (*Id.*)   In response to the ALJ's request for more specifics, Plaintiff explained that he gets "a sharp pain that hits the lower back" that "will end up going away, but it ends up being a sharp pain."  (R. at 50-51.)  The pain level at the hearing was "about a 4" but, at times, it has "gone up to a 7."  (R. at 51.)  Plaintiff experiences this pain "[e]very day" and takes prescription Tylenol.  (*Id.*)  He has tried physical therapy, heat, and ice but none of these treatments have helped his back pain much. (*Id.*)

Plaintiff testified that he has been seeing his family doctor, Dr. Ezbell (phonetic), since 2015.  (R. at 52.)  Dr. Ezbell has never recommended that Plaintiff see a pain management doctor for his lower back issues.  (*Id.*)  Plaintiff has been advised by his doctors that he will have this lower back condition "for the rest of [his] life."  (*Id.*)  As Plaintiff understands his back condition, he has arthritis and "degenerative disease." (*Id.*)  Plaintiff stated that his pain does not radiate anywhere but "stays in the lower back."  (*Id.*)

Plaintiff testified that he also has COPD for which he takes one Singulair tablet every night and has an inhaler "for it when it acts up" because he has asthma.  (R. at 53.)  Plaintiff explained that he typically uses his inhaler once a week.  (*Id.*)   Plaintiff also stated that his knee "swells up" to where he "can hardly walk" but that this only happens approximately every two to three years. (R. at 53-54.)  Upon questioning by the ALJ, Plaintiff also confirmed that he had

issues with his prostate and had had multiple procedures, but that the last procedure was in October 2016 after which he had no issues.  (R. at 54.)

When questioned by the ALJ regarding other issues, Plaintiff confirmed that he had no issues with his neck.  (R. at 55.)  However, Plaintiff testified that he has glaucoma in both eyes and takes eye drops but that the condition has affected his vision.  (R. at 55-56.)  Plaintiff also testified that he recently had been diagnosed with chronic kidney disease.  (R. at 55.)   His doctors have advised Plaintiff that he will need to contact specialists, but given the recency of his diagnosis, he had not had time to do so yet.  (R. at 56-57.)

In response to the ALJ's questioning, Plaintiff confirmed that "the main problem is the lower spine."  (R. at 57.)  Plaintiff stated that he experiences no side effects from his medications for this condition.  (*Id.*)  Plaintiff also testified that he could not lift more than 10 pounds because, if he does, his "lower back starts hurting."  (*Id*.)  Further, Plaintiff explained that he did not know how Dr. Ezbell came up with the limitations contained in his report because he did not undertake any particular strength testing.  (*Id*.)  According to Plaintiff, he generally can stand for at least an hour but then would have to rest for at least an hour before he could stand again.  (R. at 57-58.)  Plaintiff testified that walking for him is "about the same" as standing and that he can walk for "about an hour."  (R. at 58.)  He also stated that he has no difficulty sitting in a chair. (*Id.*)

Plaintiff also addressed the symptoms of his depression as reflected in his records from the Lower Lights Christian Health Center.  (R. at 58.)  Plaintiff testified that he feels "depressed all the time" "like [he's] let people down."  (*Id.*)  He stated that psychotherapy has been helpful

4

and that he uses medication as well.  (*Id*.)  He further testified that he has trouble with concentration explaining that he could be "watching television or reading or a book or whatever and, within about [] an hour to two, [he'll] lose concentration."  (R. at 59.)  Plaintiff stated that he did not have any difficulty interacting with people.  (*Id*.)

He testified that, on a typical day, he will get up, help his girlfriend around the house, do some outdoor chores for "maybe about an hour," and then rest and "go right back to what [he] was doing."  (R. at 59)  Plaintiff explained that "outdoor chores" included mowing the grass with a push mower or working on vehicles.  (*Id*.)  He stated that he did not bag the grass and that his work on vehicles included changing spark plugs, changing oil, or the brakes.  (R. at 59-60.)  He explained that people paid him cash for work on vehicles but that he did not earn more than $20 per week.  (R. at 60.)

The ALJ asked Plaintiff what kind of problems he would have maintaining work where he "didn't have to lift that much," "could be on his feet" but could also "sit down at times throughout they day," "maybe …half the day [] sitting, half the day [] on your feet."  (R. at 60.)  Plaintiff stated that his problems would be that he "can only stand for an hour and sit for an hour" and that he would "probably have problems concentrating."  (*Id*.)  He explained that his concentration problems would not be a result of pain.  (R. at 60-61.)  Further, Plaintiff testified that he had noticed his concentration problems about two years earlier and had discussed them with Dr. Ezbell but that Dr. Ezbell did not diagnose him with depression.  (R. at 60.)

The ALJ also asked Plaintiff if he would reach a point in an eight-hour day where, between his sitting and standing limitations, he would not be able to "do any type of job."  (R. at

5

61.)  Plaintiff responded that there would be such a point, and that, this would happen at least two days out of the week.  (*Id.*)  Plaintiff further explained that, on those types of days, "where [his] back really starts acting up and depression starts acting up," there was "no way [he'd] be able to perform."  (R. at 61-62.)   He testified that, on those days, he woud "relax to let [his] back ease off" and take his antidepressant to put his "depression in check."  (R. at 62.)

In response to questions from his attorney, Plaintiff testified that he only worked at his last job for four months "because of back issues."  (R. at 62.)  He explained that in the last month he worked, he "missed probably three day."  (R. at 62-63.)  Plaintiff further testified that, since 2012, his back issues and depression have gotten worse.  (R. at 63.)  He also stated that he has trouble sleeping at night and recently found out he had insomnia.  (*Id.*)   He testified that he had to take naps during the daytime and was on sleep medication that allowed him to get eight hours of sleep.  (R. at 62-63.)

## III.     RELEVANT MEDICAL RECORDS AND OPINION

### A.     Dr. Whitehead

Consultative examiner, Dr. Robert D. Whitehead, examined Plaintiff on July 27, 2016. (R. at 446-449.)  Dr. Whitehead determined that Plaintiff's lumbar spine showed restricted painful range of motion with diffuse tenderness. (R. at 448.)  He further found that there were no scoliotic changes, pigment changes or scars; straight leg raises were negative bilaterally; deep tendon reflexes were symmetric bilaterally. (*Id.*)  Additionally, Waddell's signs were negative and strength was maintained in the lower extremities without focal deficits.  (*Id.*)

6

Dr. Whitehead assessed Plaintiff with right knee pain with intermittent swelling, possibly loose body or degenerative joint disease; lumbosacral back pain without active radiculopathy; and a history of both anemia and asthma.  (R. at 448.)  Based on this assessment, Dr. Whitehead opined that Plaintiff could "perform light duty jobs that afforded him the ability to sit intermittently for 1-2 hours a day."  (*Id*.)  He further opined that Plaintiff "could not perform repetitive bending or repetitive lifting and would need a 10-15 pound lifting restriction."  (*Id*.)

### B.  State Agency Reviewers

Both state agency reviewers, Dr. Diane Manos and Dr. William Bolz confirmed Plaintiff's diagnoses of degenerative disc disease and COPD.  (R. at 113; 138.)  However, both reviewers gave Dr. Whitehead's opinion no weight, finding it was "not consistent with other evidence in file and relies heavily on the statements of the claimant.  (R. at 108; 134.)  They found no support for a change in function and adopted ALJ Wansker's RFC dated February 26, 2015.  (R. at 106, 122.)

### C.  Christopher Esbel

Plaintiff testified that Mr. Esbel was his family doctor.  (R.  at  52.)  Despite this, the ALJ noted that it was unclear whether Mr. Esbel was an acceptable medical source, but considered his statement anyway, according it little weight.  (R. at 33.)  The physical medical assessment form completed by Mr. Esbel does not indicate his credentials.  (R. at 651-654.)  Mr. Esbel suggested the claimant is only able to sit and stand/walk for about two hours in an eight-hour workday and lift up to ten pounds. (R. at 651.)  He also suggested the claimant had upper extremity reaching, handling, fingering, pushing, and pulling limitations and could never stoop, crouch, crawl, or

7

work at unprotected heights or around pulmonary irritants.  (R. at 652-653.)  He also estimated the claimant could occasionally work around moving mechanical parts, humidity, wetness, extreme cold, extreme heat, and vibrations.  (R. at 653.)

### D.    Treatment Notes

Plaintiff was seen in the emergency room at Mount Carmel West on February 13, 2016, and evaluated for right knee pain and swelling.  (R. at 617-620.)   At that time, Plaintiff rated his pain a 6/10 in severity.  (*Id*.)  He denied weakness, numbness, tingling, ankle pain, hip pain, or any other complaints.  (*Id*.)  No significant radiographic abnormality of the right knee was detected.  (*Id*.)

A Mount Carmel West Orthopedic Clinic report dated March 2, 2016, revealed Plaintiff's complaint of right knee pain.  (R. 582-583.)   Plaintiff reported that he had had a similar episode approximately 2 years prior but that he had never followed up with an orthopedic surgeon and the condition improved over time.  (*Id*.)  Plaintiff was assessed with early mild degenerative arthritis of the right knee but declined an option for steroid injection.  (*Id.*)

Plaintiff was seen at Riverside Methodist Hospital on October 18, 2016, for low back pain following a fall. (R. at 515-518.)  A CT scan of his lumbar spine did not show any acute findings other than mild degenerative changes.  He was discharged on pain medication.  (*Id*.)

MRI results from Grant Medical Center dated November 1, 2016, indicated the following:  1. Increased mild-moderate central spinal canal narrowing at L3-L4 with increased moderate left foraminal narrowing, contacting the exiting left L3 foraminal nerve; 2. Moderate left foraminal narrowing at L4-L5 with mild central spinal canal narrowing at this level; 3. Mild

8

central spinal canal narrowing at L2-L3, secondary to a left paracentral disc extrusion which was new; and 4. The indeterminate T1 and T2 hypointense lesion along the left side of the L2 vertebral body was unchanged, benign. (R. at 550-551.)

Plaintiff was seen and treated in the emergency room at Mount Carmel West on September 18, 2017, after being struck in the back by the mirror of a passing vehicle as he was stepping out of a car. At that time, Plaintiff reported "severe pain with pain radiating down his legs." (R. at 594-603). CT imaging revealed "scattered degenerative changes of the cervical, thoracic, and lumbar spine without fracture." (*Id.*)

## IV. ADMINISTRATIVE DECISION

On April 27, 2018, the ALJ issued his decision. (R. at 21-40.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2018. (R. at 27.) At the outset, the ALJ also explained his obligations in light of ALJ Wansker's prior decision:

> I acknowledge the claimant has previously filed applications for disability and disability insurance benefits and supplemental security income. However, I do not find a basis for reopening these prior determinations (20 CFR 404.988 and 416.1488). Social Security Ruling (SSR) 91-5p was also considered and does not apply in this case. Accordingly, the previous determinations are final and binding.

> As mentioned above, on February 26, 2015, ALJ Wansker previously issued an unfavorable decision on a prior application for a period of disability and disability insurance benefits under Title II of the Social Security Act, as well as a Title XVI application for supplemental security income filed by the claimant (Exhibit BIA). Procedurally, I must apply the principles set forth in *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997) *(See also* Social Security Acquiescence Ruling (AR) 98-4(6)) and *Dennard v. Secretary of Health and Human Services,* 907 F.2d 598 (6th Cir. 1990) *(See also* AR 98-3(6)). This precedent holds that absent new and material evidence, a subsequent Administrative Law Judge is bound by the findings of a previous Administrative

Law Judge. I have complied with *Drummond* and the other cited precedence and find that new and material evidence submitted after February 26, 2015, the date of ALJ Wansker's prior decision, demonstrates the claimant's condition subsequently worsened (Exhibits BIF-Bl5F). Therefore, as discussed in more detail below, the residual functional capacity assessed herein has been further reduced from that assessed in the prior Administrative Law Judge's decision.

At step one of the sequential evaluation process[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since February 27, 2015, his alleged onset date.  (*Id.*) The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine and chronic obstructive pulmonary disease (COPD).  (*Id.*)  He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 29.)  At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he has the following additional limitations. The claimant can frequently climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can occasionally stoop. He can frequently kneel. He can occasionally crouch. He can frequently crawl. The claimant can never be exposed to unprotected heights or around moving mechanical parts. He can have only occasional exposure to humidity, dusts, odors, fumes, and pulmonary irritants. He can have occasional exposure to extreme cold and extreme heat.

(R. at 30.)

In formulating this RFC, the ALJ explained:

At the time of ALJ Wansker's prior decision, the claimant had mild degenerative disc disease of the lumbar spine and mild COPD, which in combination, did not preclude the claimant from performing a reduced range of medium exertional work with various postural and environmental restrictions (Exhibit B1A/6-10). However, because subsequent imaging of the claimant's lumbar spine showed a progression in the claimant's degenerative disc disease, I instead conclude the claimant is limited to a reduced range of light exertional work. In particular, November 2015 magnetic resonance imaging (MRI) revealed mild to moderate central spinal canal narrowing at L3-L4, moderate left foraminal narrowing at L4-L5 with mild central canal spinal narrowing, and mild central spinal canal narrowing at L2-L3 (Exhibit B9F/16-l 7). Internal medicine consultative examiner Dr. Whitehead also subsequently suggested the claimant exhibited restricted range of motion and diffuse tenderness of the lumbosacral spine and walked with a slightly forward flexed gait at the lumbar spine (Exhibit B5F/3-4, 9).

Relying on the VE's testimony, the ALJ found that Plaintiff's limitations precluded his ability to do perform his past relevant work as a kitchen helper and cook.  (R. at 34.)  In reaching this conclusion, the ALJ specifically noted:

Although *Dennard* and AR 98-3(6) mandate that an administrative law judge is bound by the findings of a previous administrative law judge, I conclude that new and material evidence substantiates a finding of changed circumstances as it relates to the claimant's past relevant work. ALJ Wansker previously found the claimant had past relevant work as a dishwasher (DOT Code 311.677-018), food prep line cook (DOT Code 412.687-010), and machine operator (DOT Code 754.685-014) and that the claimant could perform his past relevant work as a line cook or machine

11

operator (Exhibit BlA/10-11). However, because this decision concerns a different
fifteen-year period, the impartial vocational expert characterized the claimant's past
work differently, and the claimant now has a more restrictive residual functional
capacity, I do not adopt ALJ Wansker's prior findings on these issues.

(R. at 33.)

The ALJ proceeded to conclude, however, that Plaintiff could perform other jobs that exist in

significant numbers in the national economy, including representative occupations such as

Inspector – hand packager; Label coder; Mail clerk; and Small parts assembler. (R. at 35.) He

therefore concluded that Plaintiff was not disabled under the Social Security Act at any time

since February 27, 2015, the alleged onset date. (R. at 36.)

## V.  STANDARD OF REVIEW

 When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

 Although the substantial evidence standard is deferential, it is not trivial.  The Court must

"'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

Plaintiff puts forth one contention of error:  the ALJ failed to properly evaluate the opinion evidence of record.  Plaintiff's contention is without merit.

Initially, Plaintiff argues that the ALJ failed to properly evaluate the opinion evidence of Dr. Whitehead and Christopher Esbel, contending that these opinions are consistent with each other and supported by his treatment records.  According to Plaintiff, the ALJ elected to dismiss these opinions "in favor of his own medical interpretation of the record."  (ECF No. 10, at p. 9.) Plaintiff explains his argument slightly differently in reply, stating that it focuses on "the ALJ's dismissal of the opinions provided by the consultative examiner hired by Social Security, Dr. Whitehead, and the inconsistent decision to look upon the state agency non-examining opinions more favorably."  (ECF No. 17, at p. 2.)  Plaintiff continues "that the ALJ's decision is inconsistent with the record evidence."  (*Id.*)  However, he seems to re-characterize this

inconsistency as arising from the ALJ's decision to give "some" weight to both Dr. Whitehead's opinions and those provided by non-examining state agency physicians Drs. Manos and Bolz. Plaintiff asserts that according these opinions similar weight is confusing because they were "drastically different from one another."  (*Id*. at p. 3.)  Plaintiff believes that the ALJ violated the "hierarchy" of review by not according the opinion of Dr. Whitehead - the only acceptable medical source of record - its proper due.  Plaintiff also appears to have abandoned any reliance on Mr. Esbel's opinion – choosing not to address the questions raised by both the ALJ and the Commissioner regarding his apparent lack of credentials.

Regardless of Plaintiff's fluid framing of his challenge to the ALJ's evaluation of the medical evidence, substantial evidence supports the ALJ's assessment of the medical evidence generally and of Dr. Whitehead's opinion specifically.  The ALJ had this to say about Dr. Whitehead's opinion:

> Internal medicine consultative examiner Dr. Whitehead opined the claimant could perform light duty jobs that afford him the ability to sit intermittently for one to two hours a day (Exhibit B5F/4). He also opined the claimant is unable to perform repetitive bending or lifting and would need a ten to fifteen pound lifting restriction *(Id.)*. Even though Dr. Whitehead conducted a physical examination of the claimant, I give his statement only some weight, as it was based on a one-time examination. While I have elected to view the evidence in the light most favorable to the claimant and find he is limited to light exertional work, nothing in the evidence of record supports a finding that he is unable to sit for more than one or two hours per day. As discussed above, healthcare providers often observed the claimant to be resting comfortably and in no apparent distress during medical evaluations (Exhibits B3F/48; B4F/14, 25; B5F/3; Bl2F/6). He also testified he is able to perform physically demanding activities of daily living such as helping around the house, mowing the lawn with a push mower, and working on vehicles. Moreover, Dr. Whitehead's restriction regarding no repetitive bending or lifting is too vague to support a residual functional capacity.

(R. at 32.)

14

The ALJ did not err by according this opinion "some" weight. As the ALJ noted, Dr. Whitehead examined Plaintiff only one time. Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Hobbs v. Berryhill*, No. 3:17-CV-00095-DCP, 2019 WL 1332370, at *3 (E.D. Tenn. Mar. 25, 2019) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). An ALJ is entitled to give less weight to a consultative examiner's opinion. *See Earley v. Comm'r of Soc. Sec.*, No. 2:19-CV-53, 2020 WL 1080417, at *3 (S.D. Ohio Mar. 6, 2020) (citing *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (2017) (noting that a one-time meeting with a psychological consultative examiner does not "create the on-going treatment relationship necessary to apply the treating source rule")). These opinions are weighed "'based on the examining relationship (or lack thereof), specialization, consistency, and supportability.'" *Hobbs*, at *3 (quoting *Gayheart,* 710 F.3d at 376)*;* 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). "An ALJ is only required to provide good reason for explaining the weight assigned to the opinion of a 'treating source.'" *Id; see also* 20 C.F.R. § 416.927(c)(2); *Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant."). Rather, opinions from one-time consultative examiners are not due any special degree of deference. *Id.* (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)). "Greater weight is assigned to the opinion of a consultative source if that source has

15

examined the claimant." *Earley, at \*3* (citing *Staymate*, at 467)). "Additionally, 'an ALJ's decision to give weight to medical opinion evidence does not require the ALJ to incorporate every restriction proposed by the medical source.'" *Id.* (quoting *Price v. Comm'r of Soc. Sec.*, No. 2:18-CV-128, 2019 WL 396415, at \*2 (S.D. Ohio Jan. 31, 2019)).

Here, the ALJ reasonably considered record evidence that tended to contradict Dr. Whitehead's opinion regarding the severity of Plaintiff's limitations. Substantial evidence supports this conclusion. For example, consistent with the medical records discussed above, the ALJ noted that Plaintiff's treatment in the interim had been limited and conservative. This view is supported by Plaintiff's testimony that he used Tylenol for pain and that his family physician had not referred him to pain management specialist during anytime since 2015. (R. at 51-52.) It also is supported by the lack of record evidence of physician recommended surgical intervention or physical therapy. (R. at 31.) Further, the record confirms that Plaintiff's physical examinations, undertaken most frequently in connection with treatment for other, non-severe health issues, generally revealed unremarkable findings. (*See, e.g.*, R. 333, 338, 388, 416, 428, 434.)

In addition to the limited record evidence regarding Plaintiff's degenerative disc disease, objective medical evidence supporting his claim of chronic knee pain is even more limited. For example, treatment records indicate that Plaintiff suffered knee swelling infrequently and that he rejected the option of a pain injection. (R. at 582-583.) Physical examinations also frequently demonstrated normal range of motion and no signs of tenderness. Dr. Whitehead's own report specifically describes Plaintiff's knee pain as

16

"intermittent," arising from "no specific injury," "lasting for about a month or so," "with minimal to no pain when it is not swollen." (R. at 446.)

Further, Dr. Whitehead's opinion was inconsistent with the extent of Plaintiff's daily activities. Plaintiff testified to his ability to help around the house, use a push mower, and work on vehicles. (R. at 59-60.) The ALJ properly discounted Dr. Whitehead's opinion on this basis. *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain.").

Additionally, to the extent that Plaintiff asserts that the ALJ treated the opinions of the non-examining physicians more favorably, the Court finds this argument to be at odds with a fair reading of the ALJ's discussion. The ALJ addressed the opinions of Drs. Manos and Bolz as follows:

> As for the opinion evidence, the opinions of State agency medical consultants Diane Manos, M.D., and William Bolz, M.D., support the finding that the claimant's impairments are not as limiting as alleged (Exhibits B2A/7-8; B3A/7-8; B6A/9; B7 A/9). Both Drs. Manos and Bolz opined that there was no new and material evidence that substantiated finding less restrictive residual functional capacity than the one ALJ Wansker previously found. However, while they are both board-certified physicians who have extensive program knowledge, they did not examine the claimant personally. As mentioned above, internal medicine consultative examiner Dr. Whitehead determined the claimant had restricted painful range of motion with diffuse tenderness of the lumbar spine (Exhibit B5F/4, 9). Evidence subsequently entered into the record also showed the claimant's lumbar degenerative disc disease had progressed (Exhibit B8F/52, 57-58). As such, even though the claimant testified he is able to help around the house and do some outdoor chores for brief periods, I find the claimant's medical condition has

17

worsened slightly since ALJ Wansker's prior decision, thereby warranting a finding that he is instead limited to a restricted range of light exertional work. Based on these factors, I find the opinions of Drs. Manos and Bolz some weight.

To Plaintiff's benefit, the ALJ adopted more restrictive limitations than these reviewing physicians endorsed. That is, despite the limited objective support for Dr. Whitehead's opinion, the ALJ, while acknowledging the restrictions of *Drummond*, found that the MRI evidence suggested a worsening of Plaintiff's degenerative disc disease. Accordingly, he adopted a more limited RFC from that set forth in ALJ Wansker's opinion and adopted by these reviewers. This cannot be reasonably construed as the ALJ's "more favorable" treatment of these opinions. Rather, as the Commissioner notes, the ALJ "reasonably concluded that the truth lay between the opinions of the state agency reviewing physicians who believed that Plaintiff could perform medium work" and the "more draconian" opinions in the record. (ECF No. 16, at pp. 12-13.) In short, substantial evidence supports the ALJ's weighing of these particular medical opinions here.[2]

In essence, Plaintiff's entire argument here is that the ALJ should have weighed Dr. Whitehead's opinion more heavily in his analysis. The law in the Sixth Circuit is clear that a court cannot reweigh evidence considered by the ALJ. Consequently, the Court declines to do so

---

[2] To the extent it remains at issue here, the ALJ also reasonably discounted the opinion of Christopher Esbel, giving it little weight. (R. at 33.) Although the ALJ liberally construed Mr. Esbel as an acceptable medical source, his medical credentials were not established in the record. Moreover, the ALJ's reasons for discounting this alleged medical opinion enjoy record support. Despite Plaintiff's testimony that Mr. Esbel was his family doctor, and Mr. Esbel's statement on the medical form that he had been treating Plaintiff since 2015, his statement was unaccompanied by any treatment records. (R. at 651 - 654.) Further, the limitations he identified are inconsistent with Plaintiff's activities of daily living. (R. at 59-60.)

here. *See Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013) (internal quotations and citations omitted) ("Here, the [plaintiff] asks us to reweigh the evidence and substitute our judgment for that of the ALJ.  We cannot do so.  Even if we would have taken a different view of the evidence were we the trier of facts, we must affirm the ALJ's reasonable interpretation."). Even if there is substantial evidence or indeed a preponderance of the evidence to support a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003).  Here, the ALJ's findings are supported by substantial evidence within his "zone of choice."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

## VII.    CONCLUSION

From a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:   November 2, 2020

                                                    */s/ Elizabeth A. Preston Deavers*
                                                    Elizabeth A. Preston Deavers
                                                    Chief United States Magistrate Judge

20