UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**VICTOR E. BROW,**

      **Plaintiff,**

                         :

  v.                        Case No. 2:19-cv-4480
                              Judge Sarah D. Morrison
                              Chief Magistrate Judge Elizabeth
**COMMISSIONER OF**          A. Preston Deavers
**SOCIAL SECURITY,**

                         :

      **Defendant.**

## OPINION AND ORDER

Victor E. Brow ("Plaintiff") brings this action under 42 U.S.C. §§ 405(g) and 1383(c) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security disability insurance and supplemental security income benefits. Plaintiff filed his Statement of Errors on February 3, 2020. (Statement of Errors, ECF No. 10.) The Commissioner filed a Memorandum in Opposition (Mem. in Opp'n, ECF No. 16) to which Plaintiff replied (Reply, ECF No. 17). On November 2, 2020, Chief Magistrate Judge Deavers issued a Report and Recommendation, recommending that the Court overrule Plaintiff's statement of errors and affirm the Commissioner's denial of benefits. (R&R, ECF No. 18.) Plaintiff timely filed his Objection to the Magistrate Judge's Report and Recommendation (Obj., ECF No. 19) and the Commissioner filed a Response (Resp., ECF No. 20). For the reasons set forth below, the Court **OVERRULES** Plaintiff's

1

objection, **ADOPTS** the Magistrate Judge's Report and Recommendation, and **AFFIRMS** the Commissioner's decision.

I.  BACKGROUND

A.  **Procedural History**

In May 2016, Plaintiff filed the instant applications for disability insurance benefits under Title II of the Social Security Act (the "Act") and for supplemental security income benefits under Title XVI of the Act. (Admin. Record ("R."), 235–47, ECF No. 9.) Plaintiff's applications were denied initially and upon reconsideration. (*Id.* at 112–13, 138–39.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 167.) ALJ Kevin Vodak conducted a hearing at which Plaintiff, represented by counsel, appeared and testified. (*Id.* at 41–69.) Vocational expert Pamela Tucker (the "VE") also appeared and testified at the hearing. (*Id.*) On August 27, 2018, the ALJ issued a decision finding that Plaintiff was not disabled under the Act. (*Id.* at 21–40.) The Appeals Council denied Plaintiff's request for review. (*Id.* at 1–7.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

B.  **Relevant Record Evidence**

The record evidence relevant to Plaintiff's Objection is summarized below.

1.  **Plaintiff's Hearing Testimony**

Plaintiff testified before the ALJ that his problems included difficulty with his lumbar spine. (R. at 50.) He stated that, since 2015, his "[l]ower back is affecting [him] where [he] cannot work . . . ." (*Id.*) In response to the ALJ's request for more specifics, Plaintiff explained that he gets "a sharp pain that hits the lower back"

that "will end up going away, but it ends up being a sharp pain." (*Id.* at 50–51.) Plaintiff reported the pain level at the time of the hearing as "about a 4" but, stated that at times, it had "gone up to a 7." (*Id.* at 51.) Plaintiff experiences this pain "[e]very day" and takes prescription Tylenol. (*Id.*) He has tried physical therapy, heat, and ice but none of these treatments have helped his back pain much. (*Id.* at 51–52.)

Plaintiff testified that he has been seeing his family doctor, Dr. Esbel[1], since 2015. (*Id.* at 52.) According to Plaintiff, Dr. Esbel has never recommended that Plaintiff see a pain management doctor for his lower back issues. (*Id.*) Plaintiff has been advised by his doctors that he will have this lower back condition "for the rest of [his] life." (*Id.*) As Plaintiff understands his back condition, he has arthritis and "degenerative disease." (*Id.*) Plaintiff stated that his pain does not radiate anywhere but "stays in the lower back." (*Id.*) Plaintiff experiences no side effects from his medications for this condition. (*Id.* at 57.) Plaintiff also testified that he could not lift more than 10 pounds because, if he does, his "lower back starts hurting." (*Id.*) Further, Plaintiff explained that he did not know how Dr. Esbel came up with the limitations contained in his report because he did not undertake any strength testing. (*Id.*)

According to Plaintiff, he generally can stand for at least an hour but then would have to rest for at least an hour before he could stand again. (*Id.* at 57–58.)

---

[1] Appears phonetically in the transcript as "Dr. Ezbell." Although Plaintiff alleged that Mr. Esbel was his family doctor, the ALJ found that it was unclear whether Mr. Esbel was an acceptable medical source. The ALJ considered Mr. Esbel's opinion, but accorded it little weight. (R. at 33.)

3

Plaintiff testified that walking for him is "about the same" as standing and that he can walk for "about an hour." (*Id.* at 58.) He also stated that he has no difficulty sitting in a chair. (*Id.*)

Plaintiff further testified that, on a typical day, he will get up, help his girlfriend around the house, do some outdoor chores for "maybe about an hour," and then rest and "go right back to what [he] was doing." (*Id.* at 59) Plaintiff explained that "outdoor chores" included mowing the grass with a push mower or working on vehicles. (*Id.*) He stated that his work on vehicles included changing spark plugs, changing oil, or the brakes. (*Id.* at 60.)

The ALJ asked Plaintiff what kind of problems he would have maintaining work where he "didn't have to lift that much," "could be on his feet" but could also "sit down at times throughout the day," "maybe . . . half the day [] sitting, half the day [] on your feet." (*Id.*) Plaintiff stated that his problems would be that he "can only stand for an hour and sit for an hour." (*Id.*) Plaintiff further indicated that, although he would "probably have problems concentrating," those problems would not be a result of pain. (*Id.* at 60–61.)

### 2. Dr. Whitehead's Opinion

Consultative examiner, Dr. Robert D. Whitehead, examined Plaintiff on July 27, 2016. (*Id.* at 446–49.) Dr. Whitehead determined that Plaintiff's lumbar spine showed restricted painful range of motion with diffuse tenderness. (*Id.* at 448.) He further found that there were no scoliotic changes, pigment changes or scars; straight leg raises were negative bilaterally; deep tendon reflexes were symmetric bilaterally; Waddell's signs were negative; and strength was maintained in the

lower extremities without focal deficits. (*Id.*) Dr. Whitehead assessed Plaintiff with right knee pain with intermittent swelling, possibly loose body or degenerative joint disease; lumbosacral back pain without active radiculopathy; and a history of both anemia and asthma. (*Id.*) Based on this assessment, Dr. Whitehead opined that Plaintiff could "perform light duty jobs that afforded him the ability to sit intermittently for 1–2 hours a day." (*Id.*) He further opined that Plaintiff "could not perform repetitive bending or repetitive lifting and would need a 10–15 pound lifting restriction." (*Id.*)

### 3. Treatment Notes

Plaintiff was seen in the emergency room at Mount Carmel West on February 13, 2016, and evaluated for right knee pain and swelling. (*Id.* at 617–20.) At that time, Plaintiff rated his pain a 6/10 in severity. (*Id.* at 617.) He denied weakness, numbness, tingling, ankle pain, hip pain, or any other complaints. (*Id.*) No significant radiographic abnormality of the right knee was detected. (*Id.* at 619.)

A Mount Carmel West Orthopedic Clinic report dated March 2, 2016, revealed Plaintiff's complaint of right knee pain. (*Id.* at 582–83.) Plaintiff reported that he had had a similar episode approximately two years prior but that he had never followed up with an orthopedic surgeon and the condition improved over time. (*Id.* at 582.) Plaintiff was assessed with early mild degenerative arthritis of the right knee but declined an option for steroid injection. (*Id.*)

Plaintiff was seen at Riverside Methodist Hospital on October 18, 2016, for low back pain following a fall. (*Id.* at 515–18.) A CT scan of his lumbar spine "did

5

not show any acute findings other than mild degenerative changes." (*Id.* at 518.) He was discharged on pain medication. (*Id.*) An MRI two weeks later found:

- Increased mild-moderate central spinal canal narrowing at L3-L4 with increased moderate left foraminal narrowing, contacting the exiting left L3 foraminal nerve;

- Moderate left foraminal narrowing at L4-L5 with mild central spinal canal narrowing at this level;

- Mild central spinal canal narrowing at L2-L3, secondary to a left paracentral disc extrusion which was new; and

- The indeterminate T1 and T2 hypointense lesion along the left side of the L2 vertebral body was unchanged, benign.

(*Id.* at 550–51.)

Plaintiff was next seen in the emergency room at Mount Carmel West on September 18, 2017, after being struck in the back by the mirror of a passing vehicle as he was stepping out of a car. (*Id.* at 594–603.) At that time, Plaintiff reported "severe pain with pain radiating down his legs." (*Id.* at 597.) CT imaging revealed "scattered degenerative changes of the cervical, thoracic, and lumbar spine without fracture." (*Id.* at 602–03.)

6

### C. ALJ's Decision

The ALJ issued his decision on August 27, 2018. (*Id.* at 21–40.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 27, 2015 (the alleged onset date of Plaintiff's disability). (*Id.* at 27.) At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine and chronic obstructive pulmonary disease. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 29.) At step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he has the following additional limitations. The claimant can frequently climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can occasionally stoop. He can frequently kneel. He can occasionally crouch. He can frequently crawl. The claimant can never be exposed to unprotected heights or around moving mechanical parts. He can have

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

7

only occasional exposure to humidity, dusts, odors, fumes, and pulmonary irritants. He can have occasional exposure to extreme cold and extreme heat.

(*Id.* at 30.) In formulating the RFC, the ALJ considered Plaintiff's hearing testimony, medical treatment records, and medical opinions included in evidence, including that of consultative examiner, Dr. Whitehead. (*Id.* at 30–33.)

At step five of the sequential process, the ALJ found that Plaintiff could not perform his past relevant work as a kitchen helper or cook. (*Id.* at 33–34.) Relying on the VE's testimony, the ALJ found that jobs exist in significant numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (*Id.* at 34–35.) The ALJ therefore concluded that Plaintiff was not disabled under the Act. (*Id.* at 36.)

## II. STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the

8

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

### III. ANALYSIS

In his Statement of Errors, Plaintiff argued that the ALJ's decision should be reversed because the ALJ failed to properly evaluate the opinions of consultative examiner, Dr. Robert D. Whitehead, and alleged treating physician, Christopher Esbel. (*See generally*, Statement of Errors.) The Magistrate Judge recommended that the contention of error be overruled, and the Commissioner's decision denying benefits be affirmed. (*See generally*, R&R.)

Plaintiff now advances a single, familiar objection to the R&R: that the ALJ failed to properly evaluate the opinion evidence of Dr. Whitehead. (*See generally*, Obj.) Notably, Plaintiff does not allege any error on the part of the Magistrate Judge—he simply regurgitates the argument set out in his Statement of Errors. (*Compare* Obj., 2–3, *with* Statement of Errors, 6–8.) The Magistrate Judge found that argument unpersuasive:

> Here, the ALJ reasonably considered record evidence that tended to contradict Dr. Whitehead's opinion regarding the severity of Plaintiff's limitations. Substantial evidence supports this conclusion. For example, consistent with the medical records discussed above, the ALJ noted that Plaintiff's treatment in the interim had been limited and conservative. This view is supported by Plaintiff's testimony that he used Tylenol for pain and that his family physician had not referred him to pain management specialist during anytime since 2015. (R. at 51–52.) It also is supported by the lack of record evidence of physician recommended surgical intervention or physical therapy. (R. at 31.) Further, the record confirms that Plaintiff's physical examinations, undertaken most frequently in connection with treatment for other, non-severe health issues, generally revealed unremarkable findings. (*See, e.g.*, R. 333, 338, 388, 416, 428, 434.)

9

> In addition to the limited record evidence regarding Plaintiff's degenerative disc disease, objective medical evidence supporting his claim of chronic knee pain is even more limited. For example, treatment records indicate that Plaintiff suffered knee swelling infrequently and that he rejected the option of a pain injection. (R. at 582-583.) Physical examinations also frequently demonstrated normal range of motion and no signs of tenderness. Dr. Whitehead's own report specifically describes Plaintiff's knee pain as "intermittent," arising from "no specific injury," "lasting for about a month or so," "with minimal to no pain when it is not swollen." (R. at 446.)
>
> Further, Dr. Whitehead's opinion was inconsistent with the extent of Plaintiff's daily activities. Plaintiff testified to his ability to help around the house, use a push mower, and work on vehicles. (R. at 59–60.) The ALJ properly discounted Dr. Whitehead's opinion on this basis. *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain.").

(R&R, 16–17.)

The Court agrees with the Magistrate Judge's analysis. As a consultative examiner, Dr. Whitehead's opinion was not entitled to any special deference, *Hobbs v. Berryhill*, No. 3:17-cv-00095-DCP, 2019 WL 1332370, at *3 (E.D. Tenn. Mar. 25, 2019) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)), and was properly discounted, *see* 20 C.F.R. § 404.1529(c)(3). To the extent Plaintiff points to medical records supporting the limitations set forth in Dr. Whitehead's opinion, the mere existence of such records does not indicate that the ALJ's decision to discount the opinion was not supported by substantial evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). As the Magistrate Judge correctly found, substantial evidence indeed supports the ALJ's decision—including medical records showing unremarkable findings, a history of conservative treatment, and activities

10

of daily living that suggest greater abilities than those opined by Dr. Whitehead. Plaintiff's objection is **OVERRULED**.

## IV.  CONCLUSION

Based upon the foregoing, and pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, after a *de novo* determination of the record, this Court concludes that Plaintiff's objection to the Report and Recommendation of the Magistrate Judge is without merit. The Court, therefore, **OVERRULES** Plaintiff's Objection (ECF No. 19), **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 18), and **AFFIRMS** the Commissioner's decision.

The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Order and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**